IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

RONALD DIXON, JR. and          :
KELLY DIXON,                   :      C.A. No: K13C-10-007 RBY
                               :
        Plaintiffs,            :
                               :
    v.                         :
                               :
PLEASANT BATSON, JR. d/b/a     :
BATSON'S HARNESS SHOP,         :
                               :
        Defendant,             :
                               :
JACK'S MANUFACTURING, INC.,    :
a foreign corporation,         :
                               :
        Third-Party Defendant. :

Submitted: July 20, 2015
Decided: July 30, 2015

***Upon Consideration of Defendant's
Motion for Reconsideration of Commissioner's Order
GRANTED***

**ORDER**

Gregory S. McKee, Esquire, Laura S. McConnell, Esquire, Wharton Levin Ehrmantraut & Klein, P.A., Wilmington, Delaware, and *Pro Hac Vice* Michael S. Rubin, Esquire, Wharton Levin Ehrmantraut & Klein, P.A., Annapolis, Maryland for Plaintiffs.

Megan T. Mantzavinos, Esquire, and Marc Sposato, Esquire, Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., Wilmington, Delaware for Defendant.

Paul D. Sunshine, Esquire, and Lisa M. Grubb, Esquire, McGivney & Kluger, P.C., Wilmington, Delaware for Third-Party Defendant.

Young, J.

## SUMMARY

Ronald Dixon ("Mr. Dixon, and, together with Kelly Dixon, "Plaintiffs") avers that he purchased a faulty horse bit from Pleasant Batson, Jr. ("Defendant"). Plaintiffs further allege that Mr. Dixon was injured, when that bit came loose from a horse, following which Mr. Dixon fell out of a cart being drawn by said horse.

In pursuing their negligence suit against Defendant, Plaintiffs have indicated they will present the expert testimony of three healthcare providers, who were all Mr. Dixon's treating physicians at one point or another. A lengthy discovery dispute has arisen, concerning the expert disclosures of these three medical professionals. Defendant takes issue with the fact that none of the three experts has submitted an expert report, and that Defendant has not been provided their curricula vitae. Further, Defendant contends that the disclosures that have been provided, fail to put him on notice of the substance or bases of these expert opinions.

After reviewing the expert disclosures provided by Plaintiffs through the discovery process, the Court deems these disclosures to be insufficient to meet the requirements of Superior Court Civil Rule 26. Therefore, Plaintiffs are to augment their disclosures.

## FACTS AND PROCEDURES

Plaintiffs filed suit against Defendant, on October 2, 2013, seeking to recover damages as a result of Mr. Dixon's purported syncope, concussion and visual disturbances. Since that time, the parties have engaged in extensive discovery. During the discovery process, controversy has arisen concerning Plaintiffs' expert disclosures – in particular, the disclosures of three medical providers, who are said to have been Mr. Dixon's treating physicians.

2

Dissatisfied with the disclosures received, Defendant filed a motion to compel, heard by Commissioner Freud, on February 26, 2015. Prior to this hearing, supplemental disclosures were filed by Plaintiffs. However, Defendant was not satisfied with the information received. Commissioner Freud suggested that the desired information concerning these three experts be obtained through interrogatories. Following Defendant's filing of interrogatories, Plaintiffs moved for a protective order. Commissioner Freud, again, heard argument concerning these matters, on June 25, 2015. At that time, Defendant requested that Plaintiffs provide curricula vitae and expert reports. The Commissioner ordered Plaintiffs to provide more information regarding Mr. Dixon's visual disturbances. However, the Commissioner did not require the filing of curricula vitae, or of expert reports. Defendant moves for reconsideration of the Commissioner's Order.

## DISCUSSION

The issue before the Court concerns the sufficiency of Plaintiffs' medical expert disclosures. Although it is common practice in this Court for parties to procure and submit reports prepared by their experts, Plaintiffs in this case have, instead, made these disclosures in a series of discovery responses – often, after a motion to compel by Defendant. In addition, Plaintiffs did not provide standard curricula vitae for each respective expert.

In support of their personal injury case against Defendant, Plaintiffs have offered the expertise of Dr. Margaret D. Malaro, M.D., a board certified family medicine doctor, Dr. Joel M. Rutenberg, M.D., a board certified neurologist, and Dr. Kelly L. Abbrescia, D.O., who is board certified in emergency medicine. All three healthcare providers were Mr. Dixon's treating physicians, at one time or another,

following the purported accident.

As a starting point, Superior Court Civil Rule 26 requires that each party disclose any respective experts, all expert's opinions, and the bases for those opinions, "so that the opposing party can properly prepare for depositions and trial."[1] That is, "[i]t is not reasonable to require [opposing] counsel to go on a wild goose chase with [adversary's] experts or to depose [adversary's] experts without the benefit of having the opinions and medical or scientific reasoning for these opinions."[2] In essence, this is about permitting each side to prepare its respective "best" case.

In formulating their positions, the parties both cite to the Delaware Supreme Court's decision in *Hill v. DuShuttle*, which involved a similar discovery dispute, regarding a plaintiff's disclosure of his experts.[3] In *Hill*, the Supreme Court considered whether the Superior Court had abused its discretion in dismissing Plaintiff's case because of his Counsel's refusal to submit an expert report, despite court orders instructing him to do so.[4] Plaintiff's Counsel insisted Plaintiff's medical records were sufficient in alerting Defendant of the experts' opinions.[5] Although the Supreme Court found that, ultimately, such a sanction was too extreme, the Court did recognize the egregiousness of Plaintiff's Counsel's obstinance.[6]

---

[1] *Sammons v. Doctors for Emergency Servs. P.A.,* 913 A.2d 519, 530 (Del. 2006).

[2] *Id.,* at 529.

[3] 58 A.3d 403 (Del. 2013).

[4] *Id.*

[5] *Id.*

[6] *Id.*

As regards our case, *Hill* is not of great aid, given the fact that Plaintiffs have to some extent complied with Court orders; and, although not providing expert reports, have made efforts to disclose some information concerning their experts and these experts' expected opinions. This discovery dispute will, therefore, be decided based upon whether the disclosures that have been provided are enough to meet the information disclosure rationale of Rule 26.

One of the central disagreements between the parties is whether Rule 26's requirement of expert disclosures mandates the submission of an expert report. Plaintiffs claim that it does not, while Defendant insists that it does. In support of his contention, Defendant cites to the transcript of a hearing held in *Branum v. Babcock Power, Inc., et. al.*, in which the Superior Court noted "[Y]ou cannot do it [disclose experts] in a way in a Rule 26 disclosure, but you have to give more than 'the plaintiff's going to testify to the following things.' That's not sufficient. There has to be a report, or it has to be more disclosure."[7] Plaintiffs respond that this statement, made in a hearing, rather than a judicial opinion, does not limit disclosure to an expert report. Plaintiffs argue that the *Branum* Court viewed it as an "either/or" situation.

Traditionally, the submission of an expert report is anticipated. Nevertheless, Plaintiffs assert that no Delaware authority has *explicitly* stated that expert disclosures under Rule 26 require an expert report. In fact, some of the Supreme Court authority to which the parties refer, recognizes the prevalence of expert reports and the *expectation* that testifying expert witnesses provide reports of their findings.[8]

---

[7] N10C-08-228, ASB, at 32 (Apr. 3, 2014).

[8] *See e.g., Hill,* 58 A.3d at 406 ("[w]hether it would provide more information or not, a *formal report* is required under the rules and the trial court ordered that report be

The point is bolstered by the fact that Plaintiffs' disclosures have engendered continued controversy, requiring constant resolution by this Court. In addition, and perhaps, more importantly, the disclosures that Plaintiffs have provided are, upon review, lacking in the substance necessary to provide Defendant with sufficient information to defend Plaintiff's case. An expert report would have avoided that deficiency.

Of greatest concern in Plaintiffs' disclosures is the nearly identical nature of the descriptions of the experts' opinions. To the word, Plaintiffs provide the same recitation of each of the three experts' opinions:

- [expert at issue] will opine to a reasonable degree of medical probability that Mr. Dixon suffered pain, trauma, and hematoma on the right side of his body and this pain, trauma, and hematoma was causally related to the February 1, 2012 accident;
- [expert at issue] will opine to a reasonable degree of medical probability that the syncope experienced by Mr. Dixon on February 1, 2012 was causally related to the February 1, 2012 accident;
- [expert at issue] will opine to a reasonable degree of medical probability that Mr. Dixon suffered a concussion and that this concussion was causally related to the February 1, 2012 accident;
- [expert at issue] will opine to a reasonable degree of medical probability that Mr. Dixon suffered head trauma and that this head trauma was causally related to the February 1, 2012 accident;
- [expert at issue] will opine to a reasonable degree of medical probability that Mr. Dixon had suffered a strain on his hip and thigh and that the strain was causally related to the February 1, 2012 accident;

produced")(emphasis added); *Sammons*, 913 A.2d at 529 ("Plaintiff was to identify her experts and provide their *reports* as to their expert opinions. Then, Defendant would be on notice of the bases for the expert opinions, and....respond in kind as to their experts and *supply the bases for their opinions by way of a report*")(emphasis added).

- [expert at issue] will opine to a reasonable degree of medical probability that Mr. Dixon suffered from a vision disorder following the accident and that the vison disorder was causally related to the February 1, 2012 accident;
- [expert at issue] will opine to a reasonable degree of medical probability that following the accident Mr Dixon was not in a condition to drive or to engage in any strenuous activity such as lifting heavy objects and that these limitations were causally related to the February 1, 2012 accident; and
- [expert at issue] will opine to a reasonable degree of medical probability that the medical treatment received by Mr. Dixon for injuries caused by the February 1, 2012 accident were reasonable and necessary and that the costs for his treatments were reasonable.[9]

In the Court's view, there are three problems with such a presentation of expert disclosures. The first is that, although this description may put the other side on notice of the substance of the expected opinions, it does not provide any insight into the bases for the experts' opinions. The Supreme Court clearly stated that the purpose of Rule 26 disclosure was not merely to inform the opposing party of the substance of the opinion, but also of "the *bases* for the expert opinions..."[10]

The second inadequacy concerns the Supreme Court's confirmation that the opposing party should not be made to go on a "wild goose chase with Plaintiffs' experts..."[11] Specifically, given the vague, pro forma, and *identical* recitation of the substance of each experts' projected testimony, Defendant is forced to prepare to question and defend against every asserted injury, when facing each of the respective

---

[9] *See* Ex. B to Defendant's Motion for Reconsideration, at 5-6.

[10] *Sammons,* 913 A.2d at 529 (emphasis added).

[11] *Id.*

experts at deposition, and at trial. The requirement of expert disclosures was meant to avoid this very situation: the opposing party confronting an expert who will, *potentially*, testify as to practically every aspect of the case. Aside from Plaintiffs' current disclosures creating the overwhelming guesswork that Rule 26 was meant to prevent, it also stretches credulity that each of these experts is *qualified* to testify as to every injury Mr. Dixon is claimed to have suffered. Each of the experts is identified as specializing in a particular field of medicine. Despite this specialization, is Defendant to anticipate that each expert may testify as to the whole filed of medicine?

Third, and of great significance, is that the "disclosures" are not from the expert at all. Rather, they are statements by counsel, who is not the witness subject to cross-examination. Hence, if at deposition or trial a question is asked challenging a "disclosure," and the responding expert merely responds that he never opined such a thing, the cross-examining counsel has no prior inconsistency to rely upon.

As regards Defendant's requests in his motion, the Court finds that Plaintiffs must supplement and augment the existing expert disclosures. *Specificity* will be key here. Identical recitations of the substance of the expert testimonies are insufficient. Morever, Plaintiffs are to reveal, through the written commitment by the expert, the *bases* upon which each opinion is formulated. Certainly, expert reports from the three testifying medical doctors would be optimal. Plaintiffs have until September 1, 2015, to comply with this Order, subject to application to, and approval by, the Court for a necessary extension.

As regards the issue of the curricula vitae, Plaintiffs will be required to provide such for each expert on or before September 1, 2015.

8

## <u>CONCLUSION</u>

In accordance with the findings in this Order, the Court **GRANTS**

Defendant's motion for reconsideration as indicated.

**IT IS SO ORDERED**.

<u>   /s/ Robert B. Young     </u>
                      J.

RBY/lmc
oc:    Prothonotary
cc:    Counsel
        Opinion Distribution